**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICK DELCORE, <br><br> Plaintiff, <br><br> v. <br><br> CUTOLO BARROS LLC *et al.*, <br><br> Defendants. | Civil Action No. 21-17735 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

This matter comes before the Court on Defendants Cutolo Barros LLC ("Cutolo") and Three Pence Brooke Condominium Association, Inc.'s ("Three Pence" and, collectively, "Defendants") Motion for Summary Judgment. (ECF No. 21.) Plaintiff Nick Delcore ("Plaintiff") opposed (ECF No. 27), and Defendants replied (ECF No. 28). This matter also comes before the Court upon Plaintiff's Motion for Summary Judgment. (ECF No. 22.) Defendants opposed (ECF No. 26), and Plaintiff replied (ECF No. 29). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies both motions.

Because Plaintiff withdraws his claims against Three Pence, the Court declines to address arguments in either motion pertaining to Three Pence and dismisses Three Pence entirely from this action. (*See* Pl.'s Opp'n Br. 5, ECF No. 27.) While the Court continues to refer to "Defendants"

throughout this Memorandum Opinion for the sake of consistency with the parties' briefing, Cutolo is the only remaining defendant in this case.[1]

## I. BACKGROUND

This case is brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). (Defs.' Statement of Undisputed Material Facts ("DSUMF") ¶ 1, ECF No. 21-1.)[2] The facts of this case are, for the most part, simple and straightforward. In February 2021, Plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code in *In re: Delcore*, No. 21-40466 (the "Bankruptcy Case"). (DSUMF ¶ 1; *see generally* Notice of Chapter 7 Bankruptcy Case, Compl. Ex. 1, ECF No. 2-1.) On June 9, 2021, Plaintiff received a Chapter 7 Order of

---

[1] The Court declines to consider an award of summary judgment in Three Pence's favor, as requested by Defendants. (*See* Defs.' Reply Br. 2-3, ECF No. 28.) The Court also declines to award sanctions against Plaintiff and his counsel for all claims asserted against Three Pence, as requested by Defendants. (*See id.*) Under Section 1692k(a)(3), a district court may award reasonable attorney's fees if it finds that an FDCPA action "was brought in bad faith and for the purpose of harassment." 15 U.S.C. § 1692k(a)(3). "Third Circuit courts interpret Section 1692k(a)(3) narrowly." *Breen v. Callagy L., P.C.*, No. 18-14472, 2020 WL 13553830, at *2 (D.N.J. Jan. 29, 2020), *aff'd sub nom. Breen v. Callagy L. PC*, 851 F. App'x 302 (3d Cir. 2021). Defendants contend that Plaintiff's counsel asserted misleading statements concerning the claims against Three Pence and that no amount of discovery changed the facts well known to Plaintiff and his counsel from before the inception of this matter, as Plaintiff failed to serve discovery on Three Pence. (Defs.' Reply Br. 2-3.) Further, Defendants contend that no amount of discovery could have changed the law on vicarious liability under the FDCPA. (*Id.* at 3.) Defendants, thus, contend that Plaintiff's claims against Three Pence were made in bad faith as of the date of the Complaint's filing. (*Id.*) Even taking all of Defendants' statements as true, the Court does not find that such conduct—the filing of a lawsuit against a defendant, especially when discovery was not even served against it—rises to the level of bad faith and harassment contemplated by Section 1692k(a)(3). The Court, thus, declines to award sanctions at this time. *See Breen*, 2020 WL 13553830, at *3 (denying award of attorney's fees under the FDCPA where defendants asserted, without evidentiary support, that plaintiff filed action for retaliation purposes).

[2] For purposes of the "Background" section, the Court relies only upon the facts provided by Defendants that Plaintiff does not substantively dispute. (*See* Pl.'s Resp. to Defs.' Statement of Material Facts ("PDSUMF"), ECF No. 27-5.)

Discharge and Final Decree discharging Plaintiff of certain debt. (DSUMF ¶ 2.) Despite this discharge, Defendants collected monies from Plaintiff through a post-judgment execution wage garnishment. (*See* Defs.' Moving Br. 1, ECF No. 21-2; Compl. ¶¶ 37-38, 46, ECF No. 1.)

In September 2021, Plaintiff filed suit under the FDCPA, alleging that under the statute, "Plaintiff has the right to be free from Defendants' deceptive and/or misleading tactics"—a right Plaintiff alleges he was deprived of through the garnishment of Plaintiff's wages despite Plaintiff's debt being discharged in bankruptcy. (Compl. ¶¶ 54-55.) Specifically, Plaintiff alleges violations of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) (Count I) and violations of 15 U.S.C. § 1692e and 11 U.S.C. § 524 (Count II). The Court denied Plaintiff's Order to Show Cause and emergency motion for preliminary injunction to enjoin enforcement of the Writ of Wage Execution Against Plaintiff (ECF No. 9), and the case proceeded to discovery.

Now before the Court are Defendants' Motion for Summary Judgment (ECF No. 21) and Plaintiff's Motion for Summary Judgment (ECF No. 22). These Motions are ripe for resolution.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the

moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III.   DISCUSSION

Defendants move for summary judgment on the grounds that (1) Three Pence is an improper defendant, (2) 11 U.S.C. § 524 does not confer a private right of action and, if it did, Plaintiff cannot establish its violation, and (3) Plaintiff's claims must be dismissed under an affirmative defense known as the "Bona Fide Error Defense." (*See generally* Defs.' Moving Br.) Plaintiff moves for summary judgment on the basis that there is no genuine dispute of material fact that Cutolo violated the FDCPA, which is a strict liability statute. (*See generally* Pl.'s Moving Br., ECF No. 22-1.) The Court addresses these arguments together, grouped by issue area, below.

### A.   11 U.S.C. § 524

The Court begins with Defendants' contention that 11 U.S.C. § 524 does not confer a private cause of action, and the Court must, thus, "reject any purported violations of" this statute in Count II of the Complaint as a matter of law. (Defs.' Moving Br. 10.) Plaintiff responds that Defendants' § 524 arguments are irrelevant because, among other reasons, the Complaint does not actually set forth a claim under 11 U.S.C. § 524. (Pl.'s Opp'n Br. 10.) While the parties expend ample ink on whether or not Plaintiff actually pled a cause of action under 11 U.S.C. § 524 (*see, e.g.*, Defs.' Reply Br. 3-4), the Court need not enter the thicket of this dispute. Because the parties apparently agree that 11 U.S.C. § 524 is an improper cause of action in this case, the Court denies any summary judgment argument as to this cause of action as moot.

### B.   Violations of the FDCPA

The Court next turns to Plaintiff's argument that Plaintiff is entitled to summary judgment for four reasons: (1) it cannot be disputed that a discharge pursuant to 11 U.S.C. § 727 discharges a bankruptcy debtor from any and all personal obligations listed in a petition; (2) it cannot be disputed that the discharge injunction set forth in 11 U.S.C. § 524 prohibits creditors from taking

5

any action to collect a debt that was discharged in bankruptcy; (3) it is beyond dispute that a debt collector engages in unfair and unconscionable conduct when it seeks to collect a debt not owed, in violation of the FDCPA; and (4) the well-settled law of the Third Circuit holds that the FDCPA is a strict liability statute, regardless of whether the creditor or debt collector professes innocence. (*See* Pl.'s Moving Br. 12.)

"The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (en banc). "To prevail on an FDCPA claim, a plaintiff must prove that (1) []he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (citation omitted).

The parties do not dispute the first three elements of this standard. The Court, thus, turns to whether Defendants have violated a provision of the FDCPA in attempting to collect the debt. Plaintiff alleges that Defendants violated § 1692e by wrongfully garnishing Plaintiff's wages. (*See* Compl. ¶¶ 54-55.) Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

The Court agrees with Plaintiff that a debt collector violates this section of the FDCPA when it attempts to collect amounts not owed. *See Ojo v. Milrose 179 Harrison, LLC*, No. 20-00949, 2021 WL 822788, at *5 (D.N.J. Mar. 4, 2021) (explaining that a debt collector violates the FDCPA when it attempts to collect amounts not owed). Here, it is undisputed that Defendants attempted to collect amounts not owed: Defendants do not dispute the legal effect of Plaintiff's bankruptcy, agree that Plaintiff's debt was discharged in bankruptcy, and acknowledge that

6

Plaintiff's wages were garnished after this debt was discharged. (*See* Defs.' Opp'n Br. 4, ECF No. 26 ("Defendants have not disputed the legal effect of Plaintiff's [b]ankruptcy and agree that Plaintiff's debt . . . was discharged . . . ."); Defs.' Moving Br. 16 ("Here, the alleged violation (i.e. attempting to collect a debt that was discharged in bankruptcy) was **not** intentional . . . ." (emphasis in original)).) In essence, Defendants do not dispute that their actions constituted a technical violation of the FDCPA.[3] Rather, Defendants' arguments center on their contention that their actions were not intentional because they did not know about Plaintiff's bankruptcy discharge and, thus, did not immediately stop the garnishment of Plaintiff's wages. (*See* Defs.' Response to Pl.'s Statement of Undisputed Material Facts ("DPSUMF") ¶¶ 19, 23-24, ECF No. 26-15; *see generally* Defs.' Moving Br.) Indeed, Defendants implicitly concede that their actions were wrongful by making it a point to note that on the day after they were served in this matter, they advised the Ocean County Sheriff (the "Sheriff") of the bankruptcy and asked the Sheriff to return all monies in the Sheriff's possession to Plaintiff's employer and the applicable writ to the Superior Court of New Jersey. (*See, e.g.*, Defs.' Opp'n Br. 11.) This concession is also implicit in Defendants' assertion that they returned the check they had received from the Sheriff back to the Sheriff. (*Id.* at 13.)

Instead of arguing over statutory semantics, the heart of Defendants' Motion for Summary Judgment and response to Plaintiff's Motion for Summary Judgment rests on the Bona Fide Error Defense, which Plaintiff also alludes to in Plaintiff's Motion for Summary Judgment. (*See id.* at 20; Defs.' Moving Br. 16; Pl.'s Moving Br. 12.) Therefore, this case turns on whether Defendants

---

[3] At no point do Defendants refute Plaintiff's contention that Defendants' collection actions constituted a technical violation of the FDCPA. *See Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 522 (W.D. Pa. 2021) ("A party that fails to address an argument in its brief in opposition to a motion for summary judgment waives that argument.").

successfully assert the Bona Fide Error Defense. If there is no genuine dispute of material fact that Defendants meet their burden on this defense, the Court will grant summary judgment in favor of Defendants on the question of liability. On the contrary, if there is no genuine dispute of material fact that Defendants cannot meet their burden on this defense, the Court will grant summary judgment in favor of Plaintiff on the question of liability. And if a genuine dispute of material fact exists on the viability of this defense, the Court will decline to award summary judgment entirely.

Section 1692k(c) of the FDCPA offers a defense to a debt collector whose violation results from a bona fide error. *See* 15 U.S.C. § 1692k(c). To avail itself of the defense, the debt collector must prove by a preponderance of the evidence that: (1) "the violation was not intentional"; (2) it resulted from a "bona fide error"; and (3) the error occurred in spite of the debt collector's "maintenance of procedures reasonably adapted to avoid any such error." *See* 15 U.S.C. § 1692(k); *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 294 (3d Cir. 2006) (outlining this defense). The debt collector must prove each of these elements by a preponderance of the evidence. *Gebhardt v. LJ Ross Assocs., Inc.*, No. 15-2154, 2017 WL 2562106, at *3 (D.N.J. June 12, 2017). These prongs "are objective and require an inquiry into whether any precautions were actually implemented, and whether such precautions were reasonably adapted to avoid the specific error at issue." *Hassine v. Simon's Agency, Inc.*, No. 18-9031, 2020 WL 3481815, at *4 (D.N.J. June 26, 2020) (citation omitted).

### 1. *Intentionality and "bona fide error"*

The parties first appear to dispute whether the violation—attempting a collect a debt that was discharged in bankruptcy—was intentional and resulted from a "bona fide error." Specifically, the parties disagree on whether Defendants received any notice of the Bankruptcy Case or were otherwise put on notice. Plaintiff attaches an affidavit stipulating that Plaintiff listed Cutolo as a

party entitled to receive notice of the filing in his petition for bankruptcy ("Bankruptcy Petition") and that the Bankruptcy Court notified listed recipients, including Cutolo, of the Bankruptcy Petition. (Delcore Dec. 12 Decl. ¶¶ 10-14, ECF No. 22-5.) Plaintiff also asserts that the Bankruptcy Court served a copy of its ultimate order of discharge on all creditors listed in the Bankruptcy Petition, including Cutolo. (*Id.* ¶ 18.) Indeed, the parties agree on the addresses that Plaintiff sent all notices in connection with the Bankruptcy Case to. (*See* DSUMF ¶ 3; PDSUMF ¶ 3.)

Defendants, however, have an explanation for the miscommunication. They contend that because Cutolo's primary office moved physical locations—a point that Plaintiff does not substantively dispute—Cutolo never received any such notices; this is true even though Cutolo took certain precautions such as employing "standard mail forwarding" from its old office (the "Manalapan Office"), to which the bankruptcy documents were allegedly served, to Cutolo's new office. (*See* Kutschman Dec. 12 Decl. ¶ 6, ECF No. 21-6; PDSUMF ¶¶ 4-6.) In fact, the last date that Cutolo received mail sent to the Manalapan Office was March 26, 2019—approximately two years prior to the commencement of the Bankruptcy Case in February 2021. (*See* Kutschman Dec. 12 Decl. ¶ 7; Defs.' Moving Br. 11-12.) And although Cutolo could have paid for the maximum allowable mail forwarding service provided by the United States Postal Service (instead of the twelve months provided free that Cutolo utilized), the last date that Cutolo could have possibly received mail sent to the Manalapan Office would have been September 26, 2020. (Kutschman Dec. 12 Decl. ¶¶ 6-8; Defs.' Moving Br. 11-12.) Among other details of the precautions Defendants took to alert individuals of its office change, Defendants' affidavit also provides that Cutolo did not receive any documents or notices in connection with the Bankruptcy Case from Three Pence, Three Pence's manager, Plaintiff, or Plaintiff's bankruptcy counsel—another point that Plaintiff does not substantively dispute. (*See* Kutschman Dec. 12 Decl. ¶ 17, DSUMF ¶ 12;

9

PDSUMF ¶ 7.) Ultimately, Defendants contend that Cutolo had no knowledge of the Bankruptcy Case until it was served with the Complaint on October 12, 2021. (*See* Kutschman Dec. 12 Decl. ¶ 15.)

Notably, the only response Plaintiff provides to this last summation statement is that it contradicts another statement made by Defendants' counsel that "for each account that is referred to [Cutolo] for collection action, [Cutolo] performs a bankruptcy search for each individual debtor prior to undertaking any initial collection action." (*See* PDSUMF ¶ 17 (quoting Kutschman Dec. 12 Decl. ¶ 19).) Plaintiff reasons: "If Cutolo had performed a bankruptcy scrub, as it claims to have done, then it would have identified the pendency of Plaintiff's bankruptcy filing before it was served with the Complaint in this action on October 12, 2021." (*Id.*) The two facts can be reconciled, however, by recognizing that in the same affidavit, Defendants' counsel states that Cutolo performed this bankruptcy search concerning Plaintiff back in 2014, before the initial collection activity took place. (Kutschman Dec. 12 Decl. ¶ 24.) Whether or not it was *reasonable* for Cutolo to perform only one bankruptcy search back in 2014—a fact which Plaintiff also disputes even occurred (*see, e.g.*, PDSUMF ¶ 35)—is a wholly separate question than whether Cutolo knew about the Bankruptcy Case before it was served with the Complaint.

Because Plaintiff does not substantively dispute Defendants' evidence that Cutolo had no knowledge of the Bankruptcy Case until the commencement of this suit, the Court finds that Defendants have met their burden to prove, by a preponderance of the evidence, that the violation was not intentional. Simply put, Defendants did not know about the Bankruptcy Case prior to their debt collection activities. *See Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 440 (D.N.J. 2013) (explaining that "while the Third Circuit has not directly addressed the issue, . . . district courts in this [C]ircuit, as well as other circuit courts, focus their intent inquiry on whether

10

the debt collector intended to violate the FDCPA"). And because Defendants have shown by a preponderance of the evidence that this violation was the result of an incorrect mailing address, the Court finds that their improper collection activities were the result of a bona fide error.[4] *See Miller v. I.C. Sys., Inc.*, No. 18-13624, 2022 WL 741029, at *9 (D.N.J. Mar. 11, 2022) (explaining that bona fide errors "must result from 'clerical or factual mistakes,' not mistakes of law" (quoting *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 282 (3d Cir. 2019)); *see also Dautrich*, 2018 WL 3201786, at *9 (finding that an error originating from a "computer program glitch" constituted a "bona fide error"). These conclusions are buttressed by the fact that within a few weeks of Plaintiff's service of the Complaint on Cutolo, Cutolo advised Plaintiff's counsel that any alleged violation was not intentional as Cutolo had been unaware of the Bankruptcy Case. (*See generally* Oct. 25 Letter, Ex. F, ECF No. 21-12.) And, as mentioned, one day after Cutolo received the Complaint, Cutolo notified the Sheriff of the Bankruptcy Case with instructions to cease all collection activity on the wage garnishment and to return any monies collected or in the Sheriff's possession. (*See* Kutschman Dec. 12 Decl. ¶ 16; Oct. 13 Letter, Ex. F, ECF No. 21-13.)

    2.    *Reasonable Procedures*

With the first two prongs of the Bona Fida Error Defense resolved, the Court turns to the meat of the parties' overall dispute: Did Defendants prove by a preponderance of the evidence that they have reasonable procedures in place to prevent the error which occurred? (*See* Defs.' Moving Br. 16 (focusing majority of Bona Fide Error Defense argument on this question); Pl.'s Opp'n Br.

---

[4] Plaintiff also contends that the Bona Fide Error Defense must fail because the certification by Defendants' counsel filed in support of Defendants' Motion for Summary Judgment "fails to state what the purported error was." (Pl.'s Opp'n Br. 16.) Yet Defendants have made clear what the error was, and Plaintiff has not explained why an affidavit to that effect is necessary. (*See* Defs.' Moving Br. 16 (explaining that the alleged violation was "attempting to collect a debt that was discharged in bankruptcy").)

11

27 (same).) Cutolo, unsurprisingly, contends that it maintains procedures reasonably adapted to avoid collecting debts that are subject to a bankruptcy discharge. (*See* Defs.' Moving Br. 17.) Specifically, Cutolo contends that it has policies and procedures of ceasing debt collection when it receives notice of a bankruptcy and/or when it has actual knowledge that a specific debt has been included in bankruptcy. (*Id.* (citing Kutschman Dec. 12 Decl. ¶ 18).) For each account that is referred to Cutolo for collection action, Cutolo performs a bankruptcy search for each individual debtor prior to undertaking any initial collection action. (Kutschman Dec. 12 Decl. ¶ 19.) If an active bankruptcy case is found, Cutolo takes no collection activity. (*Id.* ¶ 20.) If there was a previous discharge, Cutolo analyzes the debt to determine if a portion or all of the debt was discharged. (*Id.* ¶ 21.) If a portion or all of the debt is affected by the bankruptcy, Cutolo notifies its client of any modifications to the account, including any write offs as bad debt. (*Id.* ¶ 22.) Further, Cutolo's procedures require all notices of bankruptcy it receives to be distributed to both the attorney and paralegal handling the matter. (*Id.* ¶ 21.) Cutolo also describes several other procedures related to its internal processes upon receipt of bankruptcy notices. (*See* Defs.' Moving Br. 18-19.)

      As applied here, Plaintiff has been in collections with Cutolo since June 2014. (Kutschman Dec. 12 Decl. ¶ 23.) At that time, in accordance with Cutolo's procedures, Cutolo contends that it performed a bankruptcy search and found no bankruptcy concerning Plaintiff. (*Id.* ¶ 24.) At no point does Cutolo contend that it independently conducted any bankruptcy search on Plaintiff after 2014. Instead, Cutolo's main defense remains its point that had Plaintiff properly served the Bankruptcy Case notices on Defendants, all debt collection activities would have ceased, and no monies would have been collected through wage garnishment. (*See* Defs.' Moving Br. 16.)

For his part, Plaintiff disputes several of the prior characterizations. First, Plaintiff points out that Cutolo failed to provide to the Court a copy of its written FDCPA procedures and protocols ("FDCPA Policy") with Defendants' Motion for Summary Judgment. (Pl.'s Opp'n Br. 16-17.) Even considering the FDCPA Policy, which Plaintiff attaches to his motion, Plaintiff contends it does not help Defendants meet their burden: The FDCPA Policy merely provides that Cutolo will satisfy its burden of "[m]eaningful [a]ttorney [i]nvolvement" if it reviews its clients' records for bankruptcy information at the time of placement. (*See* Pl.'s Opp'n Br. 17; *see also* FDCPA Policy ¶ VII, Sanders Jan. 23 Decl. Ex. 2, ECF No. 27-3.) In addition, Plaintiff questions whether Cutolo even performed a bankruptcy search of Plaintiff back in 2014, because the billing records produced by Cutolo in discovery fail to demonstrate that Cutolo ever performed such a search. (Pl.'s Opp'n Br. 18; Cutolo Billing Records, Sanders Jan. 23 Decl. Ex. 1, ECF No. 27-1.)

After reviewing the evidence and briefing submitted in this case, the Court finds that a question exists as to whether Cutolo has reasonable procedures in place to prevent the error which occurred here. On the one hand, courts do not require that debt collectors take every conceivable precaution to avoid errors. *See Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 343 (D.N.J. 2009). But this Court has also observed:

> If the [B]ona [F]ide [E]rror [D]efense is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. Only then is the mistake entitled to be treated as one made in good faith.

*Hassine*, 2020 WL 3481815, at *5 (quoting *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008)). In *Hassine*, the Court rejected the Bona Fide Error Defense and granted summary judgment for the plaintiff where the defendant could not meet its burden of proving by a

preponderance of the evidence that it had any procedures, let alone reasonable procedures, in place to review collection letters for erroneous statements. *Id.* In that case, the evidence suggested that the defendant only reviewed letter templates on an "ad-hoc" basis, and the defendant further failed to provide any specific details as to what procedures it followed to prevent the error. *Id.*

Here, however, Defendants do detail the precautions they take—namely, performing bankruptcy searches prior to undertaking any initial collection activity, and adopting procedures as to what to do upon notice of bankruptcy discharge—to generally protect against the error that occurred in this case. While Defendants fail to enclose Cutolo's FDCPA Policy—a concerning oversight—Plaintiff does not point to any requirement that Defendants must provide to the Court such a written policy in order to avail themselves of the Bona Fide Error Defense. In any event, a review of Cutolo's FDCPA Policy reveals a requirement that "attorneys review the client file to determine any bankruptcy status," as well as a section devoted entirely to the Bona Fide Error Defense. (*See* FDCPA Policy ¶¶ VII, XII.) Thus, the Court cannot say that "there is no way for the [d]efendant to succeed on the [Bona Fide Error D]efense." *See Miller*, 2022 WL 741029, at *10.

Ultimately, the Court is left with a question as to the reasonableness of Cutolo's post-discharge debt collections policies generally, which concern the performance of an initial bankruptcy search prior to collection (here, purportedly once in 2014), with the expectation that Defendants would be notified in other ways of any potential bankruptcy case that may arise thereafter. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) (finding that the Bona Fide Error Defense applies even when defendant did not conduct a bankruptcy search prior to collection but, instead, relied upon an agreement with a creditor-client to not refer collection amounts that are in bankruptcy). The Court also ponders whether compliance with the policies outlined by Defendants would have prevented the debt collection that occurred here—a question especially heightened

because the parties have presented competing statements on whether Cutolo actually performed a bankruptcy search concerning Plaintiff prior to the commencement of any collection activity, in accordance with its alleged procedures. (*See, e.g.*, PDSUMF ¶ 35; Kutschman Cert. ¶ 24.) These questions are best left to the jury. *See Hassine*, 2020 WL 3481815, at *6 (acknowledging that "application of the [B]ona [F]ide [E]rror [D]efense is typically a question reserved for the jury"); *Matthes v. MCP Hosp. of Phil.*, No. 06-1156, 2010 WL 2348699, at *1 (E.D. Pa. June 9, 2010) ("Where, as here, the competing affidavits create a genuine [dispute] of material fact, summary judgment is inappropriate."). In sum, the Court finds that Defendants have failed to sustain their burden of proving, by a preponderance of the evidence, that the Bona Fide Error Defense—and, specifically, the third prong—applies.

            3.     *Damages*

It is also not lost on the Court that the parties dispute the amount of damages. Plaintiff contends that despite Defendants' notice to the Sheriff to cease collection activity on October 13, 2021, Cutolo's garnishment of Plaintiff's wages continued through the pay period ending October 31, 2021; Plaintiff also states that he has still not received a full refund of all monies wrongfully garnished from his paychecks, with about fourteen dollars of garnished funds missing. (*See* PDSUMF ¶¶ 40-41; *see also* Delcore Dec. 12 Decl. ¶¶ 21-23; Paystubs, Sanders Dec. 12 Decl. Ex. 3, ECF No. 22-3.) Defendants aver that several of Plaintiff's and Plaintiff's counsel's certified statements are false, including the statement that Cutolo continued to garnish his wages after Cutolo was served with this suit, and statements regarding whether and when Cutolo instructed the Sheriff to cease the garnishment. (Defs.' Opp'n Br. 11.) As for the alleged approximately fourteen dollars still owed to Plaintiff, Defendants explain that $13.90 represents the difference between the wages that were garnished ($231.76) and the amount of those wages that were

delivered to Cutolo ($217.86). (*Id.*)⁵ In other words, $13.90 represents the Sheriff's commission on the garnished wages of $231.76 from Plaintiff's employer. (*Id.*) Defendants note that the Sheriff should have returned the $13.90 to Plaintiff in accordance with Cutolo's October 13, 2021, correspondence. (*Id.* at 11-12; Kutschman Jan. 23 Decl. ¶ 12.) But, regardless, Defendants state that the Sheriff returned the $13.90 on December 21, 2022. (Kutschman Jan. 23 Decl. ¶ 12.) Thus, according to Defendants, there are no actual damages left in this case. (Defs.' Opp'n Br. 12.)

The Court finds that all money wrongfully garnished has been returned to Plaintiff. All the Court has received from Plaintiff on this issue is a conclusory statement that he is still missing approximately fourteen dollars. (Delcore Dec. 12 Decl. ¶¶ 21-22.) By contrast, Defendants attach proof that the Sheriff returned the outstanding money. (Dec. 21 Check Ex. E, ECF No. 26-6.) Plaintiff's bald allegations and conclusory statements do not suffice to establish actual damages owed. *See McNally v. Client Servs., Inc.*, No. 06-1104, 2008 WL 2397489, at *2 (W.D. Pa. June 11, 2008), *report and recommendation adopted*, No. 06-1104, 2008 WL 2987199 (W.D. Pa. July 31, 2008) (explaining that "a plaintiff seeking actual damages under the FDCPA may not rely on *purely conclusory* statements" (emphasis in original)). Accordingly, the Court concludes that there are no actual damages in this matter.

---

⁵ The parties also provide competing statements on how much money Defendants collected. (*Compare* Delcore Dec. 12 Decl. ¶ 22 (stating Defendants collected $749.57) *with* Kutschman Jan. 23. Decl. ¶ 13 (stating Defendants only received $217.86).) Because this number is not relevant to the amount of damages in dispute, the Court declines to wade into these pecuniary waters.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Cutolo's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**